UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Minnesota RFL Republican Farmer Labor
Caucus, Vincent Beaudette, Vince for
Statehouse Committee, Don Evanson, Bonn
Clayton, and Michelle MacDonald,

    Plaintiffs,

v.

Mike Freeman, *in his official capacity as
County Attorney for Hennepin County,
Minnesota, or his successor*; Mark Metz, *in
his official capacity as County Attorney for
Carver County, Minnesota, or his successor*;
Karin Sonneman, *in her official capacity as
County Attorney for Winona County,
Minnesota, or her successor*; and James C.
Backstrom, *in his official capacity as
County Attorney for Dakota County,
Minnesota, or his successor*,

    Defendants.

File No. 19-cv-1949 (ECT/DTS)

**OPINION AND ORDER**

---

Erick G. Kaardal, Mohrman, Kaardal & Erickson, P.A., Minneapolis, MN, for Plaintiffs.

Beth A. Stack, Hennepin County Attorney's Office, Minneapolis, MN, for Defendant Mike Freeman.

Abigail Rose Kelzer, Kristin C. Nierengarten, and Scott T. Anderson, Rupp, Anderson, Squires & Waldspurger, P.A., Minneapolis, MN, for Defendants Mark Metz and Karin Sonneman.

Jeffrey A. Timmerman and William M. Topka, Dakota County Attorney's Office, Hastings, MN, for Defendant James C. Backstrom.

Cicely R. Miltich and Elizabeth C. Kramer, Office of the Minnesota Attorney General, Saint Paul, MN, for Intervenor Attorney General's Office for the State of Minnesota.

Plaintiffs, who describe themselves as "political candidates, political associations, and individuals who engage in political activities relating to political elections and campaigns in Minnesota," Compl. ¶ 17 [ECF No. 1], brought this case under 42 U.S.C. § 1983 to assert a pre-enforcement First Amendment challenge to a section of the Minnesota Fair Campaign Practices Act, Minn. Stat. § 211B.02. The challenged statute prohibits political speech based on its content and is two sentences long. Plaintiffs challenge the constitutionality of each sentence. *See id.* ¶¶ 153–197, 198–238. Defendants, four Minnesota county attorneys with authority to prosecute violations of the challenged statute, seek dismissal of Plaintiffs' complaint on two grounds pursuant to Federal Rule of Civil Procedure 12(b)(6). First, Defendants argue that the case must be dismissed because Plaintiffs do not allege that the First Amendment violation resulted from a policy or custom, a prerequisite to municipal liability under § 1983. *See* Mem. in Supp. at 7–17 [ECF No. 17]. Second, Defendants argue that Plaintiffs' claims challenging the constitutionality of § 211B.02's first sentence are barred by the doctrine of issue preclusion because two Plaintiffs already litigated and lost this same First Amendment challenge in the Minnesota state courts. *See id.* at 19–21. Defendants argue that those Plaintiffs who did not litigate this challenge are in privity with the two who did. Defendants' motion will be denied. Plaintiffs need not plead a policy or custom because they plead plausible *Ex parte Young* claims, and issue preclusion does not bar all Plaintiffs' claims because it has not been shown that all Plaintiffs are in privity.

I[1]

Defendants' motion does not implicate the merits of Plaintiffs' claims, but describing the claims puts things in context. The challenged statute provides:

> A person or candidate may not knowingly make, directly or indirectly, a false claim stating or implying that a candidate or ballot question has the support or endorsement of a major political party or party unit or of an organization. A person or candidate may not state in written campaign material that the candidate or ballot question has the support or endorsement of an individual without first getting written permission from the individual to do so.

Minn. Stat. § 211B.02. Plaintiffs claim the entire statute violates the First Amendment, though they divide their complaint into counts challenging the statute's first and second sentences. Compl. ¶¶ 153–238. Plaintiffs claim the first sentence violates the First Amendment right to free speech because it serves no compelling state interest, is not narrowly tailored, and is underinclusive and overbroad. *Id.* ¶¶ 153–185. Plaintiffs also claim the first sentence violates their First Amendment right to expressive association. *Id.* ¶¶ 186–197. Plaintiffs claim the statute's second sentence suffers from these same problems, *id.* ¶¶ 198–224, 228–238, and that it imposes an impermissible prior restraint, *id.* ¶¶ 225–227. Plaintiffs allege that "[t]he Eighth Circuit has already invalidated a closely related section of Minn. Stat. ch. 211B—Minn. Stat. § 211B.06—on First Amendment

---

[1] Defendants' motion will be adjudicated with Rule 12(b)(6)'s standards always in mind. The complaint's factual allegations and reasonable inferences from those allegations must be accepted as true. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014). The complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The factual allegations in the complaint need not be detailed but must "raise a right to relief above the speculative level." *Id.* at 555.

grounds [in] *281 Care Comm. v. Arneson*, 766 F.3d 774, 787, 789, 795–96 (8th Cir. 2014)." *Id.* ¶ 8. Plaintiffs assert their claims under § 1983 against Defendants in their "official capacity" only. *Id.* at 1 (caption) and ¶¶ 38–41. Plaintiffs allege often that they seek declaratory and injunctive relief—*i.e.*, a declaration that § 211B.02 is unconstitutional and a permanent injunction against its enforcement. *Id.* at 1 (caption) ("**Complaint for Declaratory and Injunctive Relief**"), ¶¶ 14, 180–84, 197, 220–23, 227, 238, and 239–246. In their prayer for relief, Plaintiffs seek declaratory and injunctive relief, costs "allowed by law," and attorneys' fees and costs under 42 U.S.C. § 1988. *Id.* at 47–48, ¶¶ 1–5. The most natural reading of these many assertions is that Plaintiffs seek *only* declaratory and injunctive relief. However, Plaintiffs twice allege that "Defendants' violations of Plaintiffs' constitutional rights have resulted in *damages* and this Court should grant all available relief under 28 [sic] U.S.C. § 1983." *Id.* ¶¶ 185, 224 (emphasis added).

II

A

If Plaintiffs asserted § 1983 claims against Defendants in their official capacities as county representatives, it would be debatable whether those claims should be dismissed under *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). *Monell*'s basic rule is "that civil rights plaintiffs suing a municipal entity under 42 U.S.C. § 1983 must show that their injury was caused by a municipal policy or custom." *Los Angeles County v. Humphries*, 562 U.S. 29, 30–31 (2010). In other words, a municipality cannot be held liable under § 1983 because it employed a tortfeasor, but it may be "sued directly under § 1983 for monetary, declaratory, or injunctive relief . . . [only if] the action that is alleged

4

to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690. Municipalities also "may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id.* at 690–91. Thus, the "first inquiry in any case alleging municipal liability under § 1983 is . . . whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). What if the only "policy or custom" alleged in a complaint is the municipality's role as enforcer of an allegedly unconstitutional state law? In their opening brief, Defendants do a good job of describing the law and explaining there is no settled answer to this question. The short story is that the Supreme Court has not decided the issue. Nor has the Eighth Circuit. And the other circuits are split. *See Slaven v. Engstrom*, 710 F.3d 772, 781 n.4 (8th Cir. 2013) ("Whether, and if so when, a municipality may be liable under § 1983 for its enforcement of state law has been the subject of extensive debate in the circuits."); *Duhe v. City of Little Rock*, 902 F.3d 858, 863 n.2 (8th Cir. 2018) ("Whether municipal defendants may be liable under § 1983 for enforcing a state criminal statute is a thorny issue."). Some circuits say that a municipality's enforcement of a state law cannot meet *Monell*'s policy-or-custom requirement. As the Seventh Circuit explained in *Bethesda Lutheran Homes and Servs., Inc. v. Leean*, for example:

> When the municipality is acting under compulsion of state or federal law, it is the policy contained in that state or federal law, rather than anything devised or adopted by the

5

> municipality, that is responsible for the injury. Apart from this rather formalistic point, our position has the virtue of minimizing the occasions on which federal constitutional law, enforced through section 1983, puts local government at war with state government.

154 F.3d 716, 718 (7th Cir. 1998). Other circuits say that a municipality's choice to enforce a state statute may satisfy *Monell*. For example, in *Vives v. City of New York*, the Second Circuit held that a municipality may trigger liability under *Monell* if it "decides to enforce a statute that it is authorized, but not required, to enforce" and if the enforcement decision was "focused on the particular statute in question" as opposed to a decision simply to enforce all state statutes. 524 F.3d 346, 353 (2d Cir. 2008). Here, Defendants observe that Plaintiffs identify no policy in their complaint and argue that "the very nature of plaintiffs' facial challenge to § 211B.02 renders a *Monell* claim impossible[]" because "[p]olicy responsibility in this scenario lies with the legislature only." Mem. in Supp. at 14, 15.

In response to Defendants' argument that they have not—and cannot—satisfy *Monell*, Plaintiffs say they don't assert *Monell* § 1983 claims against Defendants in their capacity as county officials, but rather *Ex parte Young* claims against Defendants in their capacity as state officials: "Contrary to what the defendants contend, the plaintiffs' complaint does not present defectively pleaded *Monell* claims—the complaint presents well-pleaded *Ex parte Young*, 209 U.S. 123 (1908) claims." Mem. in Opp'n at 2 [ECF No. 27]. Plaintiffs put it more directly later in their brief when "they hereby declare that they aren't bringing a *Monell* claim." *Id.* at 6.[2]

---

[2] Defendants reasonably understood Plaintiffs' complaint to assert *Monell* claims. The complaint refers to § 1983, Compl. ¶¶ 15, 185, 224, and 249, never mentions *Ex Parte*

6

"In *Ex parte Young*, the Supreme Court recognized [Eleventh Amendment] sovereign immunity does not bar 'certain suits seeking declaratory and injunctive relief against state officers in their individual capacities' based on ongoing violations of federal law." *Kodiak Oil & Gas (USA) Inc. v. Burr*, 932 F.3d 1125, 1131 (8th Cir. 2019) (internal citation omitted) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 269 (1997)).[3] "The *Ex parte Young* doctrine rests on the premise 'that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes.'" *Kodiak Oil*, 932 F.3d at 1131 (quoting *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011)). Whether one is a "state official" depends on whether, in relation to the challenged statute, the person represents the state. *McMillian v. Monroe County*, 520 U.S. 781, 785–86 (1997); *see also Evans v. City of Helena-West Helena*, 912 F.3d 1145, 1146–47 (8th Cir. 2019) (concluding that "the complaint states at least a plausible claim that the [court] clerk was a city official

---

*Young*, and contains no explicit allegation that Defendants act as "state" rather than county officials when they prosecute violations of § 211B.02. As will be discussed, these considerations do not mean Plaintiffs have failed to plead plausible *Ex parte Young* claims.

[3] The Supreme Court sometimes has said that *Ex parte Young* permits suits against state officers in their "official" capacities to enjoin action that would violate federal law. *See*, *e.g.*, *Verizon Maryland, Inc. v. Public Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) ("Verizon may proceed against the individual commissioners in their official capacities, pursuant to the doctrine of *Ex parte Young*." (citation omitted)); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989) (recognizing that *Ex parte Young* permits "official-capacity actions for prospective relief" against state officers) (quotation and citation omitted)). Regardless, though it certainly matters in other contexts, the individual-versus-official-capacity distinction seems insignificant in these cases. The point is that *Ex parte Young* permits suits against state officers for prospective declaratory and injunctive relief—not damages—the Eleventh Amendment notwithstanding.

at the time of the alleged wrongdoing"). To determine whether *Ex parte Young*'s exception to Eleventh Amendment immunity applies, a federal district court is to conduct a "straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Coeur d'Alene Tribe*, 521 U.S. at 296 (O'Connor, J., concurring). It also is necessary to determine whether the complaint alleges that the sued state officer has "some connection with the enforcement of the [challenged] act." *281 Care Committee v. Arneson*, 638 F.3d 621, 632 (8th Cir. 2011) ("*Care Committee I*") (quoting *Reprod. Health Servs. of Planned Parenthood of the St. Louis Region, Inc. v. Nixon*, 428 F.3d 1139, 1145–46 (8th Cir. 2005)). It is true that "[t]he *Ex parte Young* exception only applies against officials 'who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution.'" *281 Care Committee v. Arneson*, 766 F.3d 774, 797 (8th Cir. 2014) ("*Care Committee II*") (quoting *Ex parte Young*, 209 U.S. at 156). However, the Eighth Circuit seems to say that, at the Rule 12(b)(6) stage in the proceedings, a federal court need only concern itself with determining that the plaintiff has plausibly identified "a potentially proper party for injunctive relief." *Care Committee II*, 766 F.3d at 797 (quoting *Reprod. Health Servs.*, 428 F.3d at 1145). Plausibly alleging some connection between the sued official and enforcement of the challenged statute is therefore enough. *Compare Care Committee I*, 638 F.3d at 632–33 (Rule 12(b)(6)), *with Care Committee II*, 766 F.3d at 796–97 (summary judgment).

Judged against these rules and Rule 12(b)(6)'s plausibility standard, Plaintiffs plead passable *Ex parte Young* claims.[4] Plaintiffs' complaint "alleges an ongoing violation of federal law and seeks relief properly characterized as prospective[.]" *Coeur d'Alene Tribe*, 521 U.S. at 296 (O'Connor, J., concurring). There is no dispute about this. Plaintiffs allege that § 211B.02 violates the First Amendment, and the complaint's many references to declaratory and injunctive relief all but confirm that Plaintiffs seek only prospective relief.[5] The complaint plausibly alleges that Defendants are state officials when they prosecute violations of § 211B.02. The complaint describes § 211B.02's enforcement procedures in some detail. Compl. ¶¶ 45–56. It alleges that county attorneys have authority to prosecute

---

[4] It is true that Plaintiffs don't mention *Ex parte Young* by name in their complaint. That kind of omission might be a problem in a different case. It's not—or at least it seems like it shouldn't be—here. The authorities described above make clear that the plausibility of an *Ex parte Young* claim is determined by Plaintiffs' factual allegations and not labels. Research has not disclosed, and Defendants have not cited, authority holding that a complaint's failure to refer explicitly to *Ex parte Young* forbids its assertion. Defendants have not suffered prejudice as a result of the omission. This is not, for example, a case where *Ex parte Young* was sprung late in the litigation's course. It would make little practical sense to dismiss the complaint on this basis. Fed. R. Civ. P. 1. No doubt Plaintiffs would amend to add references to *Ex parte Young*, Defendants appropriately would refile their motion, and the result would be that the merits of that motion would have to be decided later rather than sooner. Importantly, this is not a situation where a plaintiff seeks to add factual allegations to a complaint by raising them in a memorandum in opposition to a motion to dismiss, a practice the Eighth Circuit prohibits. *Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989). Plaintiffs do not raise or rely on any facts in their opposition brief that aren't alleged in the complaint.

[5] Plaintiffs' two allegations that "Defendants' violations of the Plaintiffs' constitutional rights have resulted in damages and this Court should grant all available relief under 28 [sic] U.S.C. § 1983," Compl. ¶¶ 185, 224, seem too fleeting to warrant a different conclusion, especially since Plaintiffs do not request damages in their prayer for relief. Compl. at 47–48, ¶¶ 1–5. Regardless, Plaintiffs' reliance on *Ex parte Young* means they cannot recover damages and renders these assertions, if they might be understood as damages requests, pointless.

9

"any violation" of chapter 211B, including a violation of § 211B.02. Compl. ¶¶ 38–41, 53–54; Minn. Stat. § 211B.16. The complaint alleges also that county attorneys receive referrals for violations of § 211B.02 from a state office—the Minnesota Office of Administrative Hearings. Compl. ¶¶ 45–46, 53–54. Defendants do not seem to dispute—and certainly do not mount a serious opposition to the assertion—that they act as state officials when they prosecute violations of § 211B.02. To their credit, Defendants acknowledge that a "court in this District has concluded that a Minnesota county attorney may be considered a state actor when performing a prosecutorial function, under the test identified in *McMillian* and based upon an analysis of Minnesota law." Defs.' Reply Mem. at 9, n.3 [ECF No. 29] (citing *St. James v. City of Minneapolis*, No. 05-cv-2348 (DWF/JJG), 2006 WL 2591016, at *4–5 (D. Minn. June 13, 2006)). That same conclusion is appropriate here. Finally, though the litigation process may yield assurances that Defendants "will not take up [their] discretionary ability to assist in the prosecution of [§ 211B.02]," *Care Committee II*, 766 F.3d at 797, the complaint's description of Defendants' connection to the enforcement of § 211B.02 is enough to plausibly show that Defendants are proper parties for prospective declaratory and injunctive relief, *Care Committee I*, 638 F.3d at 632–33.

Defendants advance other arguments for dismissal, but none justify granting their motion. Defendants argue that "*Ex parte Young* by itself does not create a cause of action." Def. Reply Mem. at 5. That's debatable. It is true that some federal courts have said that. *E.g.*, *Michigan Corr. Org. v. Michigan Dep't of Corr.*, 774 F.3d 895, 905 (6th Cir. 2014) ("*Ex parte Young* by itself does not create such a cause of action. Put another way, *Ex*

*parte Young* provides a path around sovereign immunity *if* the plaintiff already has a cause of action from somewhere else." (citing *Indiana Prot. & Advocacy Servs. v. Indiana Family & Soc. Servs. Admin.*, 603 F.3d 365, 392–93 (7th Cir. 2010) (en banc) (Easterbrook, J., dissenting on other grounds))). But some Supreme Court cases can only be read as understanding *Ex parte Young* to implicitly create a cause of action. James Leonard, *Ubi Remedium Ibi Jus, Or, Where There's a Remedy, There's a Right: A Skeptic's Critique of Ex Parte Young*, 54 Syracuse L. Rev. 215, 279 (2004). Whether *Ex parte Young* creates a cause of action need not be resolved here because Plaintiffs have "a cause of action from somewhere else"—§ 1983. Plaintiffs assert claims under § 1983. Compl. ¶¶ 15, 185, 224, and 249. And there is no question § 1983 provides Plaintiffs a cause of action in view of the nature of their claims: "Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989) (quotation omitted). Defendants also argue that Plaintiffs must, but have failed to, allege the existence of a policy or custom because "the *Monell* requirement applies in equal measure to claims for prospective injunctive relief under *Ex parte Young*." Defs.' Reply Mem. at 8. This is not correct. *Monell*'s policy or custom requirement is "a liability standard for suits against municipalities . . . and it has no applicability to state officers who are immune from suit for damages but susceptible to suit under *Ex parte Young* for injunctive relief." *Rounds v. Clements*, 495 Fed. App'x 938, 941 (10th Cir. 2012) (Gorsuch, J.); *see also Ambrose v. Godinez*, 510 Fed. App'x 470, 471–72 (7th Cir. 2013).

B

This is not the first time Plaintiffs Bonn Clayton and Michelle MacDonald have challenged § 211B.02's first sentence on First Amendment grounds, and Defendants argue that Clayton and MacDonald's previous challenges bar all Plaintiffs from challenging § 211B.02's first sentence here under the collateral-estoppel doctrine. Mem. in Supp. at 19–21. In separate cases, the Minnesota Office of Administrative Hearings determined that Clayton and MacDonald violated § 211B.02's first sentence; Clayton and MacDonald challenged those determinations before the Minnesota Court of Appeals, arguing among other things that the first sentence of § 211B.02 is facially unconstitutional in violation of the First Amendment. *Niska v. Clayton*, No. A13-0622, 2014 WL 902680 (Minn. Ct. App. Mar. 10, 2014), *review denied* (Minn. June 25, 2014); *Linert v. MacDonald*, 901 N.W.2d 664 (Minn. Ct. App. 2017). The Minnesota Court of Appeals rejected both Clayton and MacDonald's First Amendment challenges. *Clayton*, 2014 WL 902680, at *6–10; *MacDonald*, 901 N.W.2d at 667–70. In response to Defendants' collateral-estoppel argument, Plaintiffs "Clayton, MacDonald, and the Minnesota RFL Republican Farmer Labor Caucus agree to the dismissal with prejudice of all of their claims based on § 211B.02's first sentence under Fed. R. Civ. P. 41(a)." Mem. in Opp'n at 11.[6] The issue for decision, then, is whether Clayton and MacDonald's prior challenges to § 211B.02's first sentence bar the remaining Plaintiffs' challenges to that sentence in this case.

---

[6] This statement will be construed as "a notice of dismissal" under Rule 41(a)(1)(A)(i). Though it is not necessary under Rule 41(a), for clarity's sake, an order will be entered dismissing these claims in accordance with Plaintiffs' statement.

"Under the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts 'must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.'" *Finstad v. Beresford Bancorporation, Inc.*, 831 F.3d 1009, 1013 (8th Cir. 2016) (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)). "Under Minnesota law, collateral estoppel is appropriate when the following four elements are met: (1) the issue [is] identical to one in a prior adjudication; (2) there was a final judgment on the merits; (3) the estopped party was a party or in privity with a party to the prior adjudication; and (4) the estopped party was given a full and fair opportunity to be heard on the adjudicated issue." *Illinois Farmers Ins. Co. v. Reed*, 662 N.W.2d 529, 531–32 (Minn. 2003) (quotation omitted). Under Minnesota law:

> Privity exists where a non-party's "interests are represented by a party to the action," or where a party is "otherwise so identified in interest with another that he represents the same legal right" with respect to a previously asserted claim. *Rucker v. Schmidt*, 794 N.W.2d 114, 118 (Minn. 2011) (internal quotation marks omitted). It is not enough that two individuals both wish to prevail in litigation; their legal interests must be aligned to the point of being "similarly affected by the outcome of a legal proceeding." *Id.* at 120. The Minnesota Supreme Court has emphasized that privity has no per se definition and that privity determinations "require[ ] a careful examination of the circumstances of each case." *Id.* at 118.

*Anderson v. City of St. Paul*, 849 F.3d 773, 778 (8th Cir. 2017). Add to Minnesota law an important federal procedural point: collateral estoppel is an affirmative defense, and affirmative defenses ordinarily do not subject a complaint to dismissal under Rule 12(b)(6). *Roiger v. Veterans Affairs Health Care Sys.*, No. 18-cv-00591 (ECT/TNL), 2019 WL

572655, at *7 (D. Minn. Feb. 12, 2019) (citing 5B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil* § 1357 (3d ed. & Nov. 2018 Update)). Collateral estoppel may justify a Rule 12(b)(6) dismissal only if the complaint or materials that appropriately may be considered on a Rule 12(b)(6) motion establish the defense beyond dispute. *Roiger*, 2019 WL 572655, at *7; *see also Austin v. Downs, Rachlin & Martin Burlington St. Johnsbury*, 270 Fed. App'x 52, 53 (2d Cir. 2008) ("When a defendant raises the affirmative defense of . . . collateral estoppel and it is clear from the face of the complaint that the plaintiff's claims are barred as a matter of law, dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate." (quotation omitted)). This consideration seems particularly important in view of the Minnesota Supreme Court's admonition that privity decisions "require[ ] a careful examination of the circumstances of each case." *Rucker*, 794 N.W.2d at 118.

Clayton and MacDonald's prior challenges to § 211B.02's first sentence do not warrant the Rule 12(b)(6) dismissal of the remaining Plaintiffs' challenges to that sentence in this case. Defendants identify no law or facts suggesting that Clayton or MacDonald in their prior cases represented the interests of Vincent Beaudette, the Vince for Statehouse Committee, or Don Evanson. Nothing suggests any of these three had anything to do with Clayton or MacDonald's cases. No facts suggest that Beaudette, the Vince for Statehouse Committee, or Evanson's legal interests are aligned with Clayton's or MacDonald's in relation to the prior suits. Nothing shows any of these three controlled Clayton or MacDonald's prior cases. Defendants' argument that "the outcome of that litigation has the same impact on [Clayton and MacDonald] as it does on all Minnesotans, including the

14

remaining plaintiffs," Def. Mem. at 20, seems the same thing as saying that the Minnesota Court of Appeals' decisions in *Clayton* and *MacDonald* are persuasive precedents. That is not enough to establish collateral estoppel. Finally, nothing shows that Beaudette, the Vince for Statehouse Committee, or Evanson had a "full and fair opportunity to be heard on the adjudicated issue" in the prior suits. *Illinois Farmers*, 662 N.W.2d at 531.

## ORDER

Based upon all the files, records, and proceedings in this case, **IT IS ORDERED** that:

1. Pursuant to Fed. R. Civ. P. 41(a) the claims of Plaintiffs Minnesota RFL Republican Farmer Labor Caucus, Bonn Clayton, and Michelle MacDonald based on the first sentence of Minn. Stat. § 211B.02 are **DISMISSED WITH PREJUDICE**.

2. Defendants' Joint Motion to Dismiss [ECF No. 14] is **DENIED**.


Dated:  March 23, 2020              s/ Eric C. Tostrud
                                    Eric C. Tostrud
                                    United States District Court