UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Minnesota RFL Republican Farmer Labor Caucus, Vincent Beaudette, Vince for Statehouse Committee, Don Evanson, Bonn Clayton, and Michelle MacDonald, | File No. 19-cv-1949 (ECT/DTS) |
| Plaintiffs, | **OPINION AND ORDER** |
| v. | |
| Mike Freeman, *in his official capacity as County Attorney for Hennepin County, Minnesota, or his successor*; Mark Metz, *in his official capacity as County Attorney for Carver County, Minnesota, or his successor*; Karin Sonneman, *in her official capacity as County Attorney for Winona County, Minnesota, or her successor*; and James C. Backstrom, *in his official capacity as County Attorney for Dakota County, Minnesota, or his successor*, | |
| Defendants. | |
| Attorney General's Office for the State of Minnesota, | |
| Intervenor. | |

---

Erick G. Kaardal and William F. Mohrman, Mohrman, Kaardal & Erickson, P.A., Minneapolis, MN, for Plaintiffs.

Caroline Brunkow, Christiana Martenson, and Kelly K. Pierce, Hennepin County Attorney's Office, Minneapolis, MN, for Defendant Mike Freeman.

Abigail Rose Kelzer, Kristin C. Nierengarten, and Scott T. Anderson, Rupp, Anderson, Squires & Waldspurger, P.A., Minneapolis, MN, for Defendants Mark Metz and Karin Sonneman.

Jeffrey A. Timmerman and William M. Topka, Dakota County Attorney's Office, Hastings, MN, for Defendant James C. Backstrom.

Cicely R. Miltich and Elizabeth C. Kramer, Office of the Minnesota Attorney General, Saint Paul, MN; Amy Slusser Conners and Katherine S. Barrett Wiik, Best & Flanagan, Minneapolis, MN, for Intervenor Attorney General's Office for the State of Minnesota.

Plaintiffs, who describe themselves as "political candidates, political associations, and individuals who engage in political activities relating to political elections and campaigns in Minnesota," Compl. ¶ 17 [ECF No. 1], brought this case under 42 U.S.C. § 1983 to assert a pre-enforcement First Amendment challenge to a section of the Minnesota Fair Campaign Practices Act, Minn. Stat. § 211B.02. Defendants are four Minnesota county attorneys with authority to prosecute violations of the challenged statute. Minn. Stat. § 211B.16, subd. 3. Under authority of federal law, the Attorney General for the State of Minnesota has intervened "for the limited purpose of defending the constitutionality of Minn. Stat. § 211B.02." ECF No. 30 at 1 (citing Fed R. Civ. P. 5.1(c) and 24(a)(1), and 28 U.S.C. § 2403(b)). Plaintiffs have moved for a "temporary restraining order and preliminary injunction" that, if issued, would enjoin Defendants from enforcing Minn. Stat. § 211B.02 pending the entry of a final judgment.[1]

---

[1] To the extent Plaintiffs seek a temporary restraining order, their motion does not comply with Fed. R. Civ. P. 65(b). Relevant here, Rule 65(b) provides:

> **(b) Temporary Restraining Order.**
>
> **(1)** *Issuing Without Notice.* The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:

ECF No. 46 at 1.  The motion will be denied because Plaintiffs have not met the requirements to justify granting the extraordinary remedy of a preliminary injunction.

I

The challenged statute provides:

> A person or candidate may not knowingly make, directly or indirectly, a false claim stating or implying that a candidate or ballot question has the support or endorsement of a major political party or party unit or of an organization. A person or candidate may not state in written campaign material that the candidate or ballot question has the support or endorsement of an individual without first getting written permission from the individual to do so.

Minn. Stat. § 211B.02.  Plaintiffs claim the entire statute violates the First Amendment, though they divide their complaint into counts challenging the statute's first and second sentences.  Compl. ¶¶ 153–238.  Plaintiffs claim the first sentence violates the First Amendment right to free speech because it serves no compelling state interest, is not

---

**(A)** specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
**(B)** the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

With respect to the requirements in subparagraph (b)(1)(A), Plaintiffs did not file a verified complaint, and their affidavits do not address the need for an *ex parte* hearing.  With respect to subparagraph (b)(1)(B), Plaintiffs' attorney filed no certification.  *See Buffalo Wild Wings Int'l, Inc. v. Grand Canyon Equity Partners, LLC*, 829 F. Supp. 2d 836, 837–38 (D. Minn. 2011) (stating that because the defendants received notice and the motion for a temporary restraining order was fully briefed, "the Court w[ould] treat [the motion] as one for a preliminary injunction").  Plaintiffs' motion will be adjudicated as one seeking only a preliminary injunction.

3

narrowly tailored, and is underinclusive and overbroad. *Id.* ¶¶ 153–185.  Plaintiffs also claim the first sentence violates their First Amendment right to expressive association. *Id.* ¶¶ 186–197.  Plaintiffs claim the statute's second sentence suffers from these same problems, *id.* ¶¶ 198–224, 228–238, and that it imposes an impermissible prior restraint, *id.* ¶¶ 225–227.  Plaintiffs allege that "[t]he Eighth Circuit has already invalidated a closely related section of Minn. Stat. ch. 211B—Minn. Stat. § 211B.06—on First Amendment grounds [in] *281 Care Comm. v. Arneson*, 766 F.3d 774, 787, 789, 795–96 (8th Cir. 2014) ["*Care Committee II*"]." *Id.* ¶ 8.  Plaintiffs assert their claims under § 1983 against Defendants in their "official capacity" only.  *Id.* at 1 (caption) and ¶¶ 38–41.  Plaintiffs seek declaratory and injunctive relief—*i.e.*, a declaration that § 211B.02 is unconstitutional and a permanent injunction against its enforcement.  *Id.* at 1 (caption) ("**Complaint for Declaratory and Injunctive Relief**"), ¶¶ 14, 180–84, 197, 220–23, 227, 238, and 239–246.  In their prayer for relief, Plaintiffs seek declaratory and injunctive relief, costs "allowed by law," and attorneys' fees and costs under 42 U.S.C. § 1988.  *Id.* at 47–48, ¶¶ 1–5.

II

Defendants argue in opposition to Plaintiffs' motion for a preliminary injunction that Plaintiffs lack standing under Article III.[2]  The general rules governing Article III standing are settled:

---

[2]   Notwithstanding this argument, Defendants have not moved to dismiss Plaintiffs' complaint for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

> Federal jurisdiction is limited by Article III, § 2, of the U.S. Constitution to actual cases and controversies. Therefore, the plaintiff's standing to sue "is the threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). To show Article III standing, a plaintiff has the burden of proving: (1) that he or she suffered an "injury-in-fact," (2) a causal relationship between the injury and the challenged conduct, and (3) that the injury likely will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

*Steger v. Franco, Inc.*, 228 F.3d 889, 892 (8th Cir. 2000). An injury-in-fact is the "invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citations and internal quotation marks omitted). Moreover, to have standing to obtain injunctive relief, the plaintiff also must show that he is likely to suffer future injury by the defendant and that the sought-after relief will prevent that future injury. *See City of L.A. v. Lyons*, 461 U.S. 95, 102–03 (1983). "[S]tanding is based on the facts as they existed at the time the lawsuit was filed." *Steger*, 228 F.3d at 893. Standing "must exist not only at the time the complaint is filed, but through all stages of the litigation." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (citations and internal quotation marks omitted).

To establish injury-in-fact in a pre-enforcement constitutional challenge, a plaintiff must allege, "at a minimum, that she has 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and . . . a credible threat of prosecution thereunder.'" *Jones v. Jegley*, 947 F.3d 1100, 1103 (8th Cir. 2020) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (citation omitted)). "[T]he plaintiff needs only to establish that he would like to engage in arguably

5

protected speech, but that he is [reasonably] chilled from doing so by the existence of the statute. Self-censorship can itself constitute injury in fact." *281 Care Committee v. Arneson*, 638 F.3d 621, 627 (8th Cir. 2011) ("*Care Committee I*") (citing *Virginia v. Am. Booksellers Ass'n,* 484 U.S. 383, 393 (1988)). To show a credible threat of prosecution for Article III purposes, a plaintiff need not "actually violate[]" the challenged statute or "risk prosecution." *Jones*, 947 F.3d at 1104. "Total lack of enforcement of a statute" may defeat a plaintiff's attempt to show a credible threat of prosecution, "but only in extreme cases approaching desuetude." *Care Committee I*, 638 F.3d at 628 (citing *St. Paul Area Chamber of Commerce v. Gaertner*, 439 F.3d 481, 486 (8th Cir. 2006)); *see also Jones*, 947 F.3d at 1104 (recognizing that a plaintiff's fear of consequences and self-censorship are reasonable "as long as there is no 'evidence—via official policy or a long history of disuse—that authorities' have 'actually' refused to enforce [the] statute") (quoting *Care Committee I*, 638 F.3d at 628).

At this stage of the proceedings, Plaintiffs have shown Article III injury-in-fact. Plaintiffs have filed several declarations describing arguably protected speech in which each of them (and others) would engage but that is chilled by § 211B.02. *See* MacDonald Decl. [ECF No. 51] ¶¶ 22–71; Clayton Decl. [ECF No. 53] ¶¶ 17–84; Evanson Decl. [ECF No. 54] ¶¶ 17–83; Beaudette Decl. [ECF No. 55] ¶¶ 17–85. As noted, this type of self-censorship based on the chilling effect of a state law is a sufficient injury in fact as long as the plaintiff's fear of consequences is "'objectively reasonable.'" *Care Committee I*, 638 F.3d at 627 (quoting *Zanders v. Swanson*, 573 F.3d 591, 594 (8th Cir. 2009)). Defendants argue that, "[b]ecause no [Defendant] has ever enforced or threatened to enforce

6

[§] 211B.02 against anyone, Plaintiffs do not face a 'credible threat of prosecution' under the statute." Def's Mem. in Opp'n [ECF No. 62] at 23. They say lack of enforcement has made the statute a dead letter. Defs.' Mem. in Opp'n at 25; *see Poe v. Ullman*, 367 U.S. 497, 501–02 (1961) (holding that plaintiffs lacked standing to challenge a state law because the lack of prosecutions over more than 75 years—despite flagrant violations of the law—showed that the state had an "undeviating policy of nullification"). Defendants have filed declarations in which each testifies that they have not initiated civil or criminal proceedings for violations of § 211B.02, that they are "not currently investigating" any such violations, and that they have "no present intention" to commence proceedings. *See* Backstrom Decl. [ECF No. 66]; Freeman Decl. [ECF No. 63]; Metz Decl. [ECF No. 64]; Sonneman Decl. [ECF No. 65]. Plaintiffs respond that, even if there have been no criminal prosecutions to date, there have been several administrative proceedings that have led to civil penalties, and there is nothing to stop Defendants from switching course and prosecuting violations in the future. Pls.' Reply Mem. at 3–6 [ECF No. 69].

The question, then, boils down to this: is Defendants' evidence of the absence of both past prosecutions and present investigations enough to show that Plaintiffs' fear of consequences is not objectively reasonable and to deprive Plaintiffs of standing? The better answer for Article III purposes is "no." The plaintiffs in *Care Committee I*, for example, had standing to challenge Minnesota's prohibition on making false statements about a proposed ballot initiative even though there had been no criminal prosecutions in the five years since the statute had been amended. 638 F.3d at 628, 630; *see also Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 302 (1979) (holding that plaintiffs had standing

7

to challenge a criminal statute because the statute clearly applied to their intended conduct and the state "ha[d] not disavowed any intention of invoking" it); *Jones*, 947 F.3d at 1104 (holding that a plaintiff had standing to challenge a campaign-finance law carrying criminal penalties without addressing whether anyone had ever actually been prosecuted for violating it). Defendants try to distinguish *Care Committee I*, noting that there was only a five-year history of non-prosecution for the provision at issue there, whereas here, Plaintiffs have shown no prosecutions for violations of § 211B.02 since it was enacted in 1988. Def's Mem. in Opp'n at 25. Even this longer period of non-enforcement, however, is not the type of dormancy or desuetude that deprived the plaintiffs of standing in *Poe*. *See Poe*, 367 U.S. at 501–02. This is especially true considering that § 211B.02 has been the subject of multiple administrative proceedings. *See Care Committee I*, 638 F.3d at 630 (explaining that "non-criminal consequences . . . can also contribute to the objective reasonableness of alleged chill"); *accord Susan B. Anthony List*, 573 U.S. at 165. One of these proceedings even involved Plaintiff MacDonald. *See generally Linert v. MacDonald*, 901 N.W.2d 664 (Minn. Ct. App. 2017). It is no surprise, then, that the risk of enforcement is on Plaintiffs' minds. Other Eighth Circuit cases confirm that the statements in Defendants' declarations are not the type of official disavowal that would deprive Plaintiffs of Article III standing. *See United Food & Com. Workers Int'l Union, AFL-CIO, CLC v. IBP, Inc.*, 857 F.2d 422, 429 (8th Cir. 1988) (holding that plaintiffs had standing even though state law enforcement officials indicated that they had "no 'present plan'" to enforce the challenged provisions); *see also Rodgers v. Bryant*, 942 F.3d 451, 455 (8th Cir. 2019) (explaining that a state's "in-court assurances do not rule out the possibility that it

8

will change its mind and enforce the law more aggressively in the future"). The prospect of criminal sanctions, considered alongside the history of administrative enforcement, gives Plaintiffs' sufficient reason to fear repercussions from their political speech. Again, at this stage of the litigation, they have done enough to show a cognizable injury in fact.[3]

III

A preliminary injunction is an "extraordinary remedy." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted); *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003). The Eighth Circuit's familiar *Dataphase* decision describes the list of considerations applied to decide whether to grant preliminary injunctive relief: "(1) the likelihood of the movant's success on the merits; (2) the threat of irreparable harm to the movant in the absence of relief; (3) the balance between that harm and the harm that the relief would cause to the other litigants; and (4) the public interest." *Lexis-Nexis v.*

---

[3] Defendants hint at another Article III standing question when they point out that an injunction against their enforcement of § 211B.02 won't stop other persons from filing complaints or charges against Plaintiffs under the statute. Plaintiffs place great emphasis on the risk of costly and politically damaging proceedings in the Office of Administrative Hearings (or "OAH"), whether or not those proceedings ever actually lead to a criminal prosecution. Pls.' Mem. at 25–26 [ECF No. 48]. Anyone can file a complaint with OAH, so simply enjoining four county attorneys might do little to allay Plaintiffs' fears. One might wonder, then, whether the relief Plaintiffs seek would actually redress their injury. The Eighth Circuit has considered and rejected this redressability argument. *See Care Committee I*, 638 F.3d at 631. Plaintiffs need not "show that a favorable decision will relieve [their] *every* injury," as long as it would redress a "discrete portion" of their injury. *Id.* (quoting *Minn. Citizens Concerned for Life v. FEC*, 113 F.3d 129, 131 (8th Cir. 1997) (emphasis in original)). An injunction here would eliminate the risk of a criminal prosecution—at least one initiated by these county attorneys—and Plaintiffs make clear that the risk of criminal sanction is at least part of the source of the alleged chilling effect. Pls.' Reply Mem. at 2. So even if the specter of civil proceedings initiated by private citizens would remain, Plaintiffs have cleared the Article III redressability hurdle.

*Beer*, 41 F. Supp. 2d 950, 956 (D. Minn. 1999) (citing *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 112–14 (8th Cir. 1981) (en banc)). The core question is whether the equities "so favor[] the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Dataphase*, 640 F.2d at 113 (footnote omitted). "The burden of establishing the four factors lies with the party seeking injunctive relief." *CPI Card Grp., Inc. v. Dwyer*, 294 F. Supp. 3d 791, 807 (D. Minn. 2018) (citing *Watkins*, 346 F.3d at 844).

A

"While no single factor is determinative, the probability of success factor is the most significant." *Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013) (citations and internal quotation marks omitted). Although this factor uses the term "probability," the movant need not show a greater than fifty percent likelihood of success. *Dwyer*, 294 F.Supp.3d at 807. The movant "need only show likelihood of success on the merits on a single cause of action, not every action it asserts[.]" *Id.* "[T]he absence of a likelihood of success on the merits strongly suggests that preliminary injunctive relief should be denied[.]" *CDI Energy Servs. v. W. River Pumps, Inc.*, 567 F.3d 398, 402 (8th Cir. 2009).

Plaintiffs are not likely to succeed on the merits, though this unlikeliness has nothing to do with the merits of Plaintiffs' First Amendment challenge and results instead from Plaintiffs' likely inability to satisfy a prerequisite to their claims under *Ex parte Young*, 209 U.S. 123 (1908). To recap, in response to Defendants' Rule 12(b)(6) motion to dismiss, Plaintiffs argued that they pleaded plausible *Ex parte Young* claims against Defendants in their capacities as state officials. *See Minnesota RFL Republican Farmer*

10

*Labor Caucus v. Freeman*, No. 19-cv-1949 (ECT/DTS), 2020 WL 1333154, at **2–3 (D. Minn. Mar. 23, 2020). Defendants' Rule 12(b)(6) motion was denied on the basis that "Plaintiffs plead[ed] passable *Ex parte Young* claims." *Id.* at *3. Of dispositive importance here, the opinion and order denying Defendants' motion noted that "the *Ex parte Young* exception only applies against officials *who threaten and are about to commence proceedings, either of a civil or criminal nature*, to enforce against parties affected an unconstitutional act, violating the Federal Constitution." *Minnesota RFL*, 2020 WL 1333154, at *2 (cleaned up) (emphasis added). Conversely, the exception does not apply "when the defendant official has neither enforced nor threatened to enforce the statute challenged as unconstitutional." *Care Committee II*, 766 F.3d at 797 (quoting *McNeilus Truck & Mfg., Inc. v. Ohio ex rel. Montgomery*, 226 F.3d 429, 438 (6th Cir. 2000)). The opinion also noted that, "at the Rule 12(b)(6) stage in the proceedings, a federal court need only concern itself with determining that the plaintiff has plausibly identified 'a potentially proper party for injunctive relief.'" *Minnesota RFL*, 2020 WL 1333154, at *2 (quoting *Care Committee II*, 766 F.3d at 797). At that stage, "[p]lausibly alleging some connection between the sued official and enforcement of the challenged statute [was] therefore enough." *Id.* By the very nature of the preliminary-injunction inquiry, evaluating Plaintiffs' likelihood of success on the merits of their *Ex parte Young* claims requires greater scrutiny at this stage than was applied to determine whether Plaintiffs' claims were plausible at the Rule 12(b)(6) stage. To evaluate Plaintiffs' likelihood of success on the merits, the question is "no longer . . . who is 'a potentially proper party for injunctive relief' but rather who in fact is the right party." *Care Committee II*, 766 F.3d at 797 (quoting

11

*Reprod. Health Servs. of Planned Parenthood of the St. Louis Region, Inc. v. Nixon*, 428 F.3d 1139, 1146 (8th Cir. 2005)).

Though the relationship between *Ex parte Young*'s imminence requirement and Article III's requirement of a "credible threat of prosecution" is the subject of some debate, the Eighth Circuit seems to treat them as different things. At times, the Eighth Circuit has generally described the Article III and the Eleventh Amendment inquiries as "related." *Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 957 (8th Cir. 2015); *see also Citizens for Equal Protection v. Bruning*, 455 F.3d 859, 864 (8th Cir. 2006) (holding that plaintiffs had "satisfie[d] the case or controversy requirement of Article III" by showing that the defendants fell within the *Ex parte Young* exception), *abrogated on other grounds by Obergefell v. Hodges*, 576 U.S. 644 (2015). *Care Committee II*, however, treated the two inquiries as distinct. *See* 766 F.3d at 796–97. The court there held that the plaintiffs had Article III standing based on a credible threat of prosecution, but it still dismissed the plaintiffs' claims as against the Minnesota attorney general based on her assurances that she would not assist in any prosecutions under the challenged statute. 766 F.3d at 797; *see also Okpalobi v. Foster*, 244 F.3d 405, 417 (5th Cir. 2001) (en banc) ("[A]ny probe into the existence of a *Young* exception should gauge (1) the ability of the official to enforce the statute at issue under his statutory or constitutional powers, and (2) *the demonstrated willingness of the official to enforce the statute*." (emphasis added)).[4]

---

[4] At least one circuit seems to treat the two as indistinguishable. *See Nat'l Audobon Soc'y v. Davis*, 307 F.3d 835, 847 (9th Cir. 2002) ("We decline to read additional 'ripeness' or 'imminence' requirements into the *Ex parte Young* exception . . . beyond those already imposed by a general Article III and prudential ripeness analysis.").

12

Reading these cases together, the better understanding is that the Eighth Circuit applies an imminence standard that is higher for *Ex parte Young* claims than for Article III standing.[5]

Under this standard, and based on Defendants' uncontested affidavits, Plaintiffs have not shown that Defendants are "about to commence proceedings" against them. *Ex parte Young*, 209 U.S. at 156. As noted, Defendants testify in their declarations that they never have initiated civil or criminal proceedings for violations of § 211B.02, that they are "not currently investigating" any such violations, and that they have "no present intention" to commence proceedings. *See* Backstrom Decl.; Freeman Decl.; Metz Decl.; Sonneman Decl. Plaintiffs point out that the language in the Defendants' affidavits is more circumscribed than in *Care Committee II*. There, the Minnesota attorney general indicated that her office would refuse to participate in any prosecutions under the challenged statute. 766 F.3d at 797. Here, by contrast, the Defendants say only that they have "no present intention" to prosecute. But the fact that the Defendants have not disavowed all future prosecutions does not mean that they are "about to commence proceedings" against the Plaintiffs. *Young*, 209 U.S. at 156. Nor does it change the result that *Care Committee II* did not apply its *Ex parte Young* analysis to the county attorney defendants in that case. *See* Pls.' Reply Mem. at 4–5. The county defendants in both *Care Committee* cases limited

---

[5] *Care Committee II* appears to treat this imminence standard as an Eleventh Amendment jurisdictional requirement. 766 F.3d at 797. Other circuits have suggested that it may be prudential, or simply a limit on equitable discretion. *See*, *e.g.*, *Aroostook Band of Micmacs v. Ryan*, 404 F.3d 48, 65 (1st Cir. 2005) (leaving this question open), *overruled on other grounds by Narragansett Indian Tribe v. Rhode Island*, 449 F.3d 16 (1st Cir. 2006) (en banc).

their arguments to Article III standing and ripeness, never arguing that the Eleventh Amendment barred the claims against them. *See generally* Br. of Appellee County Attorneys, *281 Care Committee v. Arneson*, No. 13-1229 (8th Cir. Apr. 26, 2013); Br. of Appellee County Attorneys, *281 Care Committee v. Arneson*, No. 10-1558 (8th Cir. June 4, 2010).

B

"Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). The harm must be "*likely* in the absence of an injunction," *Winter*, 555 U.S. at 22, "great[,] and of such imminence that there is a clear and present need for equitable relief," *Iowa Utils. Bd. v. FCC*, 109 F.3d 418, 425 (8th Cir. 1996). A plaintiff must show more than a future risk of irreparable harm; "[t]here must be a clear showing of immediate irreparable injury." *Berkley Risk Adm'rs Co., LLC v. Accident Fund Holdings, Inc.*, No. 16-cv-2671 (DSD/KMM), 2016 WL 4472943, at *4 (D. Minn. Aug. 24, 2016) (citation omitted) (internal quotation marks omitted). "Failure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction." *Watkins Inc.*, 346 F.3d at 844; *see also Gamble v. Minn. State Indus.*, No. 16-cv-2720 (JRT/KMM), 2017 WL 6611570, at *2 (D. Minn. Dec. 1, 2017) (collecting cases).

Plaintiffs have not shown irreparable harm. For starters, the earlier discussion concerning the absence of threatened, much less imminent, enforcement by Defendants is just as relevant to showing the absence of immediate irreparable injury as it was to showing

that Plaintiffs are not likely to prevail on the merits. There is more. Plaintiffs commenced this case by filing their complaint on July 24, 2019. ECF No. 1. Plaintiffs did not seek a preliminary injunction until almost one year later, on July 20, 2020. ECF No. 46. They did not request an expedited briefing schedule, meaning the motion was briefed and heard in the usual course of dispositive motions. *See* ECF Nos. 46, 60, 62, 69, and 70. But Plaintiffs have identified no particular circumstances that prompted them to seek a preliminary injunction at this time that were not present when they first filed their complaint. It is true that § 211B.02 regulates political speech and that a general election looms, but Plaintiffs acknowledged at the hearing on this motion that their claims concern political activities broadly and are not tied specifically to this election. Finally, the harm Plaintiffs identify as being attributable to Defendants seems slight—not irreparable—when one considers that Minn. Stat. § 211B.32 authorizes any person to file a complaint alleging a violation of § 211B.02, and the injunction Plaintiffs request would not address the universe of possible complaints that might be filed by persons other than Defendants.

C

The final two *Dataphase* factors do not change things. The balance-of-harms factor involves "assess[ing] the harm the movant would suffer absent an injunction," as well as the harm the other parties "would experience if the injunction issued." *Katch, LLC v. Sweetser*, 143 F. Supp. 3d 854, 875 (D. Minn. 2015). This factor favors no party. Accepting their declaration testimony as true, Plaintiffs would suffer harm in the form of chilled political speech, but that harm must be weighed against Defendants' testimony that they have no present intention of prosecuting alleged § 211B.02 violations and the fact that

15

any injunction restraining Defendants could have no effect on many other persons who may file a complaint under § 211B.32.  In other words, if the issuance of the requested injunction offers so little protection, then it seems very difficult to say that the harm Plaintiffs would suffer absent an injunction is meaningful.  The public interest also is neutral.  The public, of course, has an interest in the freedoms of speech and association, and this is especially true in the political context.  These are most important public rights.  At the same time, as the Attorney General argued in his brief, "Plaintiffs seek to modify the status quo of Minnesota's election law just months before the 2020 general election[,]" and "the Supreme Court has repeatedly emphasized that 'lower federal courts should ordinarily not alter the election rules on the eve of an election.'"  Intervenor's Opp'n Mem. [ECF No. 60] at 12 (quoting *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, ___ U.S. ___, 140 S. Ct. 1205, 1207 (2020)).  This public interest is well established and, under the circumstances of this case, counterbalances the public interests identified by Plaintiffs.  *See Purcell v. Gonzalez*, 549 U.S. 1 (2006) (per curiam).

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED THAT** Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction [ECF No. 46] is **DENIED**.

### LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  September 14, 2020	s/ Eric C. Tostrud
	Eric C. Tostrud
	United States District Court