## UNITED STATES DISTRICT COURT
### DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Minnesota RFL Republican Farmer Labor Caucus, Vincent Beaudette, Vince for Statehouse Committee, Don Evanson, Bonn Clayton, and Michelle MacDonald, | File No. 19-cv-1949 (ECT/DTS) |
| Plaintiffs, | |
| v. | **OPINION AND ORDER** |
| Mary Moriarty, *in her official capacity as County Attorney for Hennepin County, Minnesota, or her successor*; Mark Metz, *in his official capacity as County Attorney for Carver County, Minnesota, or his successor*; Karin Sonneman, *in her official capacity as County Attorney for Winona County, Minnesota, or her successor*; and Kathryn Keena, *in her official capacity as County Attorney for Dakota County, Minnesota, or her successor*, | |
| Defendants, | |
| and | |
| Attorney General's Office for the State of Minnesota, | |
| Intervenor. | |

---

Erick G. Kaardal and William F. Mohrman, Mohrman, Kaardal & Erickson, P.A., Minneapolis, MN, for Plaintiffs Minnesota RFL Republican Farmer Labor Caucus, Vincent Beaudette, Vince for Statehouse Committee, Don Evanson, Bonn Clayton, and Michelle MacDonald.

Caroline Brunkow, Christiana Martenson, Kelly K. Pierce, Beth A. Stack, and Daniel P. Rogan, Hennepin County Attorney's Office, for Defendant Mary Moriarty.

Kristin C. Nierengarten and Scott T. Anderson, Rupp, Anderson, Squires & Waldspurger, Minneapolis, MN, for Defendants Mark Metz and Karin Sonneman.

William M. Topka, Dakota County Attorney's Office, Hastings, MN, for Defendant Kathryn Keena.

Amy Slusser Conners, Best & Flanagan, Minneapolis, MN, and Elizabeth C. Kramer, Minnesota Attorney General's Office, St. Paul, MN, for Intervenor Attorney General's Office for the State of Minnesota.

---

Plaintiffs, who describe themselves as "political candidates, political associations, and individuals who engage in political activities relating to political elections and campaigns in Minnesota," Compl. ¶ 17 [ECF No. 1], brought this case under 42 U.S.C. § 1983 to assert a pre-enforcement First Amendment challenge to a section of the Minnesota Fair Campaign Practices Act, Minn. Stat. § 211B.02. Defendants are four Minnesota county attorneys with authority to prosecute violations of the challenged statute. Minn. Stat. § 211B.16, subdiv. 3.[1] Under authority of federal law, the Attorney General for the State of Minnesota has intervened "for the limited purpose of defending the constitutionality of Minn. Stat. § 211B.02." ECF No. 30 at 1 (citing Fed. R. Civ. P. 5.1(c) and 24(a)(1), and 28 U.S.C. § 2403(b)).

The parties have filed competing summary-judgment motions. Plaintiffs seek summary judgment on their claims that § 211B.02 violates their First Amendment

---

[1] Mary Moriarty was elected Hennepin County Attorney in 2022 and began her term on January 2, 2023, succeeding former Hennepin County Attorney Mike Freeman. ECF No. 121 ¶ 1. Kathryn Keena was elected Dakota County Attorney in 2022, after serving as the acting Dakota County Attorney since May 11, 2021, following James Backstrom's retirement. ECF No. 122 ¶ 1; *see also* https://www.co.dakota.mn.us/News/Pages/keena-appointed-county-attorney.aspx (last visited Mar. 13, 2023). Pursuant to Fed. R. Civ. P. 25(d), Moriarty is substituted for Freeman, and Keena for Backstrom.

free-speech rights and, if granted, an order that would "permanently enjoin Defendants from enforcing § 211B.02." Pls.' Mem. in Supp. [ECF No. 126] at 6. Defendants seek summary judgment based on Eleventh Amendment immunity.

This is the case's third round of dispositive motions. Defendants first moved to dismiss Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6). That motion was denied. *Minn. RFL Republican Farmer Lab. Caucus v. Freeman*, No. 19-cv-1949 (ECT/DTS), 2020 WL 1333154 (D. Minn. Mar. 23, 2020). Plaintiffs then sought a preliminary injunction under Rule 65(a). That motion was denied primarily because Plaintiffs failed to show that Defendants had threatened or were about to commence proceedings against them, an essential element of the exception to Defendants' Eleventh Amendment immunity created by *Ex parte Young*, 209 U.S. 123 (1908). *Minn. RFL Republican Farmer Lab. Caucus v. Freeman*, 486 F. Supp. 3d 1300, 1308–11 (D. Minn. 2020). Plaintiffs appealed, and the Eighth Circuit affirmed the motion's denial on this ground. 33 F.4th 985, 989–92 (8th Cir. 2022). Plaintiffs then petitioned for a writ of certiorari, which the Supreme Court denied. 143 S. Ct. 304 (2022). For efficiency's sake, this order presumes familiarity with the content of these earlier orders.

Defendants' summary-judgment motion will be granted, and Plaintiffs' motion will be denied (without addressing the merits of Plaintiffs' First Amendment claims). The short story is that the Eleventh Amendment immunity issue has been addressed before, both here and in the Eighth Circuit, and resolved in Defendants' favor. It is true that Defendants' summary-judgment motion presents a different procedural posture from Plaintiffs' preliminary injunction motion. It also is true that Plaintiffs have introduced new legal

arguments and evidence in opposition to Defendants' motion. But the change in procedural posture and Plaintiffs' new legal arguments and evidence provide no basis to deny Defendants' motion.

I

In its decision affirming the denial of Plaintiffs' preliminary injunction motion, the Eighth Circuit explained the *Ex parte Young* exception to Eleventh Amendment immunity and what Plaintiffs must show to establish the exception:

> "Generally, States are immune from suit under the terms of the Eleventh Amendment and the doctrine of sovereign immunity." *Whole Woman's Health v. Jackson*, --- U.S. ---, 142 S. Ct. 522, 532 (2021). The Supreme Court has "recognized a narrow exception grounded in traditional equity practice—one that allows certain private parties to seek judicial orders in federal court preventing state executive officials from enforcing state laws that are contrary to federal law." *Id.* (citing *Ex parte Young*, 209 U.S. at 159–60). "In determining whether this exception applies, a court conducts 'a straightforward inquiry into whether [the] complaint alleges an *ongoing violation of federal law* and seeks relief properly characterized as prospective.'" *281 Care Comm. v. Arneson (Care Committee I)*, 638 F.3d 621, 632 (8th Cir. 2011) (alteration in original) (emphasis added) (quoting *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002)). "The *Ex parte Young* exception only applies against officials 'who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution.'" [*281 Care Comm. v. Arneson (*]*Care Committee II*[*)*], 766 F.3d [774,] 797 [(8th Cir. 2014)] (quoting *Ex parte Young*, 209 U.S. at 156).

*Minn. RFL Republican Lab. Farmer Caucus*, 33 F.4th at 989–90 (duplicative citations deleted).

The four county attorney Defendants have filed substantially similar declarations to demonstrate that they have no present intention of threatening or commencing civil or criminal proceedings under the challenged statute against any Plaintiff.  Moriarty, for example, testifies she "ha[s] never filed, nor threatened to file, a complaint with the Minnesota Office of Administrative Hearings ("OAH") that alleges a violation of Minn. Stat.  §211B.02," that she "ha[s] never enforced, nor threatened to enforce, a violation of Minn. Stat. § 211B.02 by any person or entity," that she "ha[s] never criminally prosecuted or threatened to criminally prosecute any person or entity for an alleged violation of Minn. Stat. § 211B.02," that she is "not currently investigating any person or entity for an alleged violation of Minn. Stat. § 211B.02," that she is "not about to commence civil or criminal proceedings against any person or entity for allegedly violating Minn. Stat. § 211B.02," and that she "ha[s] no present intention to threaten enforcement of a violation of Minn. Stat. § 211B.02 by any person or entity."  Moriarty Decl. [ECF No. 121] ¶¶ 2–6.  The other county attorneys' declarations are functionally equivalent.  *See* Metz Decl. [ECF No. 64] ¶¶ 2–7; Sonneman Decl. [ECF No. 65] ¶¶ 2–7; and Keena Decl. [ECF No. 122] ¶¶ 3–9.

Faced with this same declaration testimony, and reviewing the Eleventh Amendment immunity determination *de novo*, the Eighth Circuit concluded: "The record here shows that the defendants have not enforced nor have threatened to enforce the challenged statute."  *Minn. RFL Republican Lab. Farmer Caucus*, 33 F.4th at 989, 991. Addressing Plaintiffs' argument that the county attorneys' declarations were insufficient to defeat the *Ex parte Young* exception, the court explained that the county attorneys' "failure to disavow future prosecutions is not fatal to their claim of Eleventh Amendment

immunity." *Id.* at 992.   The court explained that "[t]he proper standard in assessing [Defendants'] entitlement to such immunity is whether the county attorneys' affidavits establish their 'unwillingness to exercise [their] ability to prosecute a § 211B.0[2] claim against appellants.'" *Id.* (quoting *Care Committee II*, 766 F.3d at 797) (third and fourth alterations in original).   And the court determined that the county attorneys' declarations met this standard because they "all show that [the county attorneys] have not enforced or threatened to enforce § 211B.02." *Id.*

## II

From the Eighth Circuit's analysis, I conclude that—barring a dispositive change in either (A) the law or (B) the evidentiary record showing the presence of a genuine issue of material fact—the entry of summary judgment in Defendants' favor based on Eleventh Amendment immunity would be appropriate.   The Eighth Circuit gave no hint that, on the preliminary-injunction record, a reasonable trier of fact could find for Plaintiffs on the Eleventh Amendment immunity question.

## A

Plaintiffs identify no change in the law but argue that the Eighth Circuit and I misunderstood the law and therefore applied the wrong legal standard to decide the Eleventh Amendment immunity question at the preliminary-injunction stage.   *See* Pls.' Mem. in Opp'n [ECF No. 143] at 18–21.   Plaintiffs argue that *Ex parte Young* may be met merely by showing that a state official holds a "threatening position in the legal system," as distinguished from actually threatening legal proceedings.   *Id.* at 19.   Plaintiffs say that understanding *Ex parte Young* this way explains why "for decades, plaintiffs have been

allowed to sue local prosecutors to challenge abortion restrictions—among other types of laws—as soon as they are enacted." *Id.* at 17. "In practice," Plaintiffs contend, "courts have not required plaintiffs to prove that a defendant enforcement official is planning to commence an enforcement action." *Id.*

Plaintiffs might have a reasonable take on what the law should be, but they do not accurately describe what the law is. *Ex parte Young* itself plainly required more than that a state official hold a "threatening position." For the exception it created to apply, *Ex parte Young* explicitly required that a state official (1) be "clothed with some duty in regard to the enforcement of the laws of the state" (that is, occupy a position capable of issuing a realistic enforcement threat) "*and*" (2) "threaten and [be] about to commence proceedings, either of a civil or criminal nature." 209 U.S. at 156 (emphasis added). In other words, *Ex parte Young* does not say that its exception to a state's Eleventh Amendment immunity applies whenever suit is brought against an official who merely occupies a position from which a threat might legitimately be issued. There must also be an issued threat. That is how the Eighth Circuit understands *Ex parte Young*. *See Minn. RFL Republican Lab. Farmer Caucus*, 33 F.4th at 990 (quoting *Care Committee II*, 766 F.3d at 797).

The cases Plaintiffs rely on to support their narrower understanding of *Ex parte Young* don't support Plaintiffs. Plaintiffs suggest that a Sixth Circuit case, *McNeilus Truck and Manufacturing., Inc. v. Ohio*, , adopts their view. 226 F.3d 429 (6th Cir. 2000). It doesn't. There, the court explicitly understood *Ex parte Young* to require "an imminent threat of enforcement" before it could be applied against a state actor. 226 F.3d at 437. The court explained: "The *Ex parte Young* doctrine does not apply when the defendant

official has neither enforced nor threatened to enforce the statute challenged as unconstitutional." *Id.* at 438. Plaintiffs' suggestion that *Ex parte Young*'s threat-of-prosecution element is—as a rule—not applied in abortion cases is not correct. *See, e.g.*, *EMW Women's Surgical Ctr., P.S.C. v. Beshear*, 920 F.3d 421, 444–46 (6th Cir. 2019) (holding that the Kentucky Attorney General was not a proper party to a suit challenging an abortion restriction because he "ha[d] not enforced or even threatened to enforce" the statute). Regardless, especially because a state may waive its Eleventh Amendment immunity, *see PennEast Pipeline Co. v. New Jersey*, 141 S. Ct. 2244, 2262 (2021), it would be a mistake to understand the absence of *Ex parte Young*'s consideration in a case challenging an abortion restriction (or any case involving some other constitutional challenge to a state law) to mean that the doctrine could not have applied to the case or does not apply to cases addressing the same constitutional subject.

## B

Factually, Plaintiffs have introduced new material in opposition to Defendants' summary-judgment motion. The new material, Plaintiffs argue, would permit a reasonable trier of fact to find that Defendants have threatened and are about to commence civil or criminal proceedings against Plaintiffs under Minn. Stat. § 211B.02.

## 1

This additional evidence includes the following:

*A civil penalty imposed by the Minnesota Office of Administrative Hearings ("OAH") on a non-party for violating § 211B.02.* In December 2022, a three-judge OAH panel imposed a $250 civil penalty on non-party Nathan Miller and his campaign

committee for violating § 211B.02 during Miller's campaign for State Senate District 9. Miller Decl. [ECF No. 135] Exs. 1, 2. Miller considers himself a "constitutionally minded conservative," whose political ideology aligns primarily with the Republican Party. *Id.* ¶¶ 5–8. After Miller sought, but did not receive, the endorsement of the Republican Party of Minnesota, Miller launched a write-in campaign to run against the Republican-endorsed candidate. *Id.* Ex. 2. In October 2022, Miller agreed to attend a rally with the grassroots "Caravan of Patriots" to support conservative candidates in Otter Tail County. *Id.* The flyer for that event, created by the Caravan of Patriots, listed Miller's name as one of the candidates attending the rally with the descriptor "SD 9 – Republican Party" underneath Miller's name, and Miller posted the flyer on his campaign website. *Id.* The Republican Party of Minnesota filed a complaint alleging that Miller had violated § 211B.02, and the OAH ultimately agreed. It determined that Miller and his campaign violated the statute "by knowingly and falsely implying that Mr. Miller had the support or endorsement of the [Republican Party of Minnesota] for the office of SD9 in the general election held on November 8, 2022." *Id.* The OAH imposed a civil penalty of $250 but did not refer the matter to any county attorney. *Id.* ¶ 32. Miller testifies that he "fear[s] future [criminal] prosecutions" because he could face a complaint "every time [he] run[s] for office and identif[ies] [him]self as a Constitutional Conservative in the Republican Party—in private or public." *Id.* ¶ 40. According to Miller, "the three-year statute of limitations for criminal misdemeanors adds to [his] fear." *Id.* Miller describes the chilling effect on his speech based not only on the civil penalty imposed on him, but also on penalties imposed on others he learned about in preparing for his OAH hearing. *Id.* ¶¶ 41–45. As a result of these

incidents, he "will not be able to speak privately or publicly with [his] supporters without the threat of prosecution," and he will be forced to "curtail what [he] say[s] privately or publically [sic]" or fear prosecution. *Id*. ¶ 45. In the future, he says he "will be campaigning not to educate the electorate and potential supporters but to avoid . . . criminal prosecution." *Id*. ¶ 47. He goes on to explain the detriment a criminal prosecution would have to his future campaigns. *Id*. ¶ 48. As a result of these expressed concerns, Miller testifies that § 211B.02 "prevents [him] from speaking the truth about who [he is] and what [he] stand[s] for," or "being honest with [his] constituents, supporters and neighbors about [his] politics." *Id*. ¶ 49.

*Information posted on the OAH's website.* The OAH website includes the following summary of its role with respect to Minnesota campaign-practices and campaign finance laws:

> Administrative Law Judges at the Office of Administrative Hearings are authorized to hear and decide complaints alleging violations of the Fair Campaign Practices and Finance Acts (Minnesota Statutes, Chapters 211A and 211B). These complaints are heard by a panel of three Administrative Law Judges. The panel may dismiss the matter, issue a reprimand, impose a civil penalty of up to $5,000 and/or refer the complaint to a county attorney for criminal proceedings. Complaints filed with the Office of Administrative Hearings must proceed to a final order before the alleged violation may be prosecuted by a county attorney.

> Please note that OAH may not consider and must dismiss claims alleging violations of Minn. Stat. § 211B.06 (false campaign material). The United States Court of Appeals for the Eighth Circuit determined that statute was unconstitutional in 281 Care Committee v. Arneson.

Fair Campaign Practices, Minnesota Office of Administrative Hearings, https://mn.gov/oah/self-help/administrative-law-overview/fair-campaign.jsp (last visited March 13, 2023). In addition, the OAH website includes the following chart listing the possible penalties for violations of the Fair Campaign Practices Act:

## Possible Penalties

Every case is unique and each penalty will be selected to reflect the specific facts of the case. In order to assure some consistency from one case to the next, the three judge panel uses a presumptive penalty matrix as guidance. In any case, the three judge panel may depart from the presumptive penalty listed below and will explain the reasons for any departures.

| Willfulness | Gravity of Violation | | |
| --- | --- | --- | --- |
| | Minimal/no impact on voters, easily countered | Some impact on several voters, difficult to correct/counter | Many voters misled, process corrupted, unfair advantage created |
| Deliberate, multiple violations in complaint, history of violations, clear statute, unapologetic | $600 - 1,200 | $1,200 – 2,400 and/or Refer to County Attorney | $2,400 – 5,000 and/or Refer to County Attorney |
| Negligent, ill-advised, ill-considered | $250 - 600 | $600 - 1,200 | $1,200 – 2,400 and/or Refer to County Attorney |
| Inadvertent, isolated, promptly corrected, vague statute, accepts responsibility | $0 - 250 | $400-600 | $600 - 1,200 |

*Id.* (This penalty matrix was included in the OAH order imposing a civil penalty on Miller. Miller Decl. Ex. 2 at 9.)

*Criminal enforcement of Minn. Stat. § 211B.06 against non-parties.* In 2003, then-Carver County Attorney Michael Fahey prosecuted non-party John Knight for violating Minn. Stat. § 211B.06 because Knight's campaign had placed scripted telephone calls to potential voters falsely identifying Knight as the only Republican candidate in the race for Hennepin County Commissioner. *Republican Party of Minn., Third Cong. Dist. v. Klobuchar*, 381 F.3d 785 (8th Cir. 2004); *see also* Kaardal Decl. [ECF No. 134] Exs. 3–6. The matter was referred to Carver County by then-Hennepin County Attorney Amy

Klobuchar due to a conflict of interest.   Separately, the Ramsey County Attorney prosecuted non-party Eugene Copeland in 2002 for violating § 211B.06 because Copeland falsely stated that he was the only pro-life candidate in the special election for Minnesota State Senate District 67.  *See* Kaardal Decl. Exs. 1–2.

*Additional declaration of Plaintiff Bonn Clayton.*[2]   In his second declaration, Clayton describes how he is "frequently checking [him]self as to how [he] speak[s] in private or in public regarding [his] speech and relationships with the Republican Party" because he "remain[s] fearful that [he] will again be dragged into another OAH proceeding."  ECF No. 136 ¶ 6.  Clayton testifies that Defendants' declarations give him no comfort because "defendants don't actually promise that they will not enforce § 211B.02 in the future," and "the declarations don't bind the defendants," who are "free to prosecute persons for alleged section-211B.02 violations whenever they feel like doing so."  *Id*. ¶ 7.  To Clayton, the county attorneys' attestations that they have no present intention to criminally prosecute § 211B.02 violations are "not credible" in light of the § 211B.06 criminal prosecutions of John Knight and Eugene Copeland.  *Id*. ¶¶ 9–14.  Clayton also testifies that the § 211B.02 civil penalty imposed on Nathan Miller has "heightened [his] concern" because even though the OAH "didn't refer Mr. Miller to a county attorney," the penalty "implies that the threat of referral, and hence of criminal prosecution, for

---

[2]      In support of their summary-judgment position, Plaintiffs re-filed the same declarations they submitted originally at the preliminary injunction stage.  In these declarations, Plaintiffs describe the arguably protected speech in which each of them (and others) would engage but for the assertedly chilling effect of § 211B.02.  *See* ECF Nos. 50, 128 (Nygard); ECF Nos. 51, 129 (MacDonald); ECF Nos. 52, 130 (Swanson); ECF Nos. 53, 131 (Clayton); ECF Nos. 54, 132 (Evanson); ECF Nos. 55, 133 (Beaudette).

alleged section-211B.02 violations remains very real." *Id.* ¶¶ 15, 18; *see also* ¶ 19 (describing Miller's Notice of Panel Assignment's reference "to the appropriate county attorney"). Clayton also perceives the OAH's "penalty matrix" as a "threat of criminal prosecution." *Id.* ¶¶ 17–18. As a result of "chapter 211B's criminal and administrative enforcement history," which "signal[] that people risk being criminally prosecuted for violating § 211B.02," Clayton testifies that the statute "continues to chill [his] political speech and RFL's political speech" and causes them to "polic[e] [them]selves in such a way that is chilling [their] speech." *Id.* ¶¶ 20–22.

*Additional declaration of Plaintiff Vincent Beaudette.* In his second declaration, Beaudette incorporates his earlier declaration, ECF Nos. 55, 133, and goes on to describe his experience during the 2020 election cycle and how the "threat[] [by members of the Republican Party of Minnesota of] civil and criminal proceedings under § 211B.02 for anyone who verbally or in writing used the endorsement from . . . virtual conventions" caused him to "not engage in the types of political activities [he] would have historically done for endorsed candidates." ECF No. 137 ¶¶ 6–10. Beaudette describes the § 211B.06 criminal prosecutions of Copeland and Knight and testifies that the county attorneys' "increased [] charge" from a misdemeanor to a gross misdemeanor pursuant to § 211B.19 in those cases was "worrisome" and could "translate to a similar use of authority in the context of a § 211B.02 criminal indictment." *Id.* ¶¶ 13–18. Beaudette says that Defendants' declarations that they have "no present intention" to prosecute a § 211B.02 violation is of no consequence for the future, because "[t]hey could change their minds tomorrow." *Id.* ¶¶ 19–20. As a result, Beaudette "cannot exercise [his] freedom to be a

political advocate as a Republican" and he has had to "curtail [his] political activities because [his] fear of prosecution . . . remains real." *Id*. ¶ 22. Beaudette attributes his added fear of prosecution to the Nathan Miller civil penalty and the OAH "penalty matrix." *Id*. ¶¶ 24–27. All of these alleged threats have caused Beaudette to "significantly scale[] back from [his] political activities in support of candidates [he] wish[es] to promote, privately or publically [sic]." *Id*. ¶¶ 29–30.

*Additional declaration of Plaintiff Don Evanson*. In his second declaration, Evanson expresses his concern that "if [he] speak[s] privately or publically [sic] about the Republican local convention and its actions, anybody or any entity, can drag [him] before the [OAH] through a [§ 211B.02 complaint]." ECF No. 138 ¶ 10. Evanson testifies that he has "curtailed [his] political activities" because of his "fear of prosecution . . . [under] § 211B.02." *Id*. ¶ 12. Evanson testifies that his concerns have been "reaffirm[ed] and confirm[ed]" by the OAH penalty matrix and Nathan Miller's civil penalty for violating § 211B.02, including the potential that "the county attorney still has the option to prosecute in the future—whenever he or she wants." *See id*. ¶¶ 13–21. Evanson's concerns also stem from the criminal prosecutions of Knight and Copeland under § 211B.06, and he describes how in his view those prosecutions under § 211B.06 raise the possibility of criminal prosecution under § 211B.02. *Id*. ¶¶ 22–27. As a result, Evanson testifies that he "cannot exercise [his] freedom to be a political advocate as a Republican," and that he fears civil and criminal prosecution that will linger for the three-year statute of limitations if he "speak[s] [his] truth." *Id*. ¶ 30. Evanson expresses his fears regarding how a prosecution under § 211B.02 might affect him, both personally and professionally. *Id*. ¶ 32. Like the

other declarants, Evanson testifies that he remains fearful of prosecution despite the county attorneys' averments that they have "no present intent" to prosecute under § 211B.02. *Id*. ¶ 34.

*Additional declaration of Plaintiff Michelle MacDonald*. MacDonald describes her previous OAH civil penalty and how it "continues to have a profound effect on [her]" and causes her to fear "an allegation under § 211B.02, even if what [she] said were true." ECF No. 139 ¶¶ 4–6. MacDonald, who "align[s] with the Republican Party," has had to "curtail [her] political activities for fear of not only civil prosecution, but also the threat of criminal prosecution under Minn. Stat. § 211B.02." *Id*. ¶¶ 7–8. The OAH "penalty matrix" and Miller's civil penalty in December 2022 incorporating that matrix add to her fears, though she knows that "so far, Miller has not been criminally prosecuted." *See id*. ¶¶ 10–17. She finds the county attorneys' declarations of "no present intent" to prosecute meaningless in the face of the OAH matrix, which presents the "option" of criminal referral, and she finds the "irony . . . dripping." *Id*. ¶¶ 18–22, 31. McDonald testifies that the § 211B.06 prosecutions of Knight and Copeland add to her fear of prosecution. *Id*. ¶¶ 24–30, 32, 34–35. She fears that if she were "exposed to a criminal indictment" as Knight and Copeland were for "speak[ing] [her] truth," she "would have to wait four years before it could be expunged" and she "would have to hire a lawyer to have this type of legal work done." *Id*. ¶¶ 33–34.

2

This additional factual record will be evaluated with the familiar summary-judgment standards in mind. Summary judgment is warranted "if the movant shows that

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute over a fact is "material" only if its resolution "might affect the outcome of the suit" under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.

With respect to Defendants' motion, the issue is whether, based on the expanded summary-judgment record, a trier of fact could reasonably determine that Defendants have "'threaten[ed] and are about to commence proceedings, either of a civil or criminal nature, to enforce'" Minn. Stat. § 211B.02 against Plaintiffs. *Minn. RFL Republican Farmer Lab. Party*, 33 F.4th at 990; *see Care Committee II*, 766 F.3d at 797 ("At this stage in the proceedings we are no longer concerned with who is 'a *potentially* proper party for injunctive relief' but rather who in fact is the right party." (quoting *Reprod. Health Servs. of Planned Parenthood of the St. Louis Region, Inc. v. Nixon*, 428 F.3d 1139, 1146 (8th Cir. 2005))). The record evidence shows as a matter of law that Defendants have neither enforced nor threatened to enforce the challenged statute; the evidence Plaintiffs cite cannot reasonably be construed to undermine Defendants' declarations and sworn assurances of non-prosecution.

Evidence of civil penalties imposed by the Minnesota Office of Administrative Hearings under § 211B.02 does not create a genuine issue of material fact regarding the county attorneys' intentions. The notion that OAH's past actions show that it recently has

16

threatened and is about to commence enforcement action against Plaintiffs seems questionable. Regardless, assuming OAH's past actions are sufficient to make that showing as to *OAH*, that says nothing about *Defendants'* enforcement activities or intentions. OAH and the county attorneys are separate, distinct organizations. Plaintiffs identify no legal authority that might justify attributing OAH's actions to Defendants. Plaintiffs cite no case in which, for example, the actions of one state actor were attributed to another—whether owing to shared enforcement responsibility or for any other reason— for *Ex parte Young*'s purposes. Courts seem careful to respect state actors' separateness when evaluating *Ex parte Young* issues. *See, e.g.*, *McNeilus Truck and Mfg.*, 226 F.3d at 437–38. Nor do Plaintiffs identify evidence that might factually connect OAH's past actions to Defendants in a way that might, in turn, warrant finding (based on the OAH's past actions) that Defendants have threatened or are about to commence enforcement activities against Plaintiffs. Plaintiffs identify no evidence showing that any Defendant played any role whatsoever in these past prosecutions. None of the past administrative matters Plaintiffs identify were, for example, referred to a county attorney for further action. Finally, it seems important to note that Plaintiffs cited evidence of OAH's past § 211B.02 enforcement activities in support of their motion for a preliminary injunction. *See* ECF No. 48 at 4–5. The presence of this evidence did not figure explicitly in the Eighth Circuit's opinion, but it also did not keep the Eighth Circuit from finding: "The record here shows that the defendants have not enforced nor have threatened to enforce the challenged statute." *Minn. RFL Republican Farmer Lab. Caucus*, 33 F.4th at 991. In other words,

finding that this same evidence now creates a genuine issue of material fact as to the *Ex parte Young* question would risk nonadherence to the Eighth Circuit's decision.

The passages Plaintiffs call out from the OAH's website create no genuine fact dispute regarding Defendants' enforcement intentions, either. This is so for reasons explained already—the fact that OAH and the county attorneys are separate organizations, and the absence of record evidence connecting them together to any enforcement of § 211B.02 against Plaintiffs. There is more. The passages Plaintiffs cite provide truthful information regarding OAH's role in adjudicating violations of the Fair Campaign Practices and Finance Acts and presumptive penalties that may be imposed if the OAH were to find a violation. It is difficult to distinguish these passages from innumerable places where the government (state or federal) publishes information regarding adjudicatory processes or consequences relevant to civil or criminal legal regimes. Plaintiffs cite no case or other legal authority suggesting that this kind of ubiquitous information might reasonably be understood to show an enforcement threat. If that were the law—in view of the vast amount of such information state governments routinely provide—*Ex parte Young*'s threat-of-enforcement requirement would prove to be virtually meaningless.

The then-Carver County Attorney's 2003 prosecution of John Knight and the then-Ramsey County Attorney's 2002 prosecution of Eugene Copeland, both under Minn. Stat. § 211B.06, bear no rational relationship to Defendants' prosecutorial intentions concerning Plaintiffs under § 211B.02. This is so for common-sense reasons. Those prosecutions occurred roughly two decades ago. The prosecutions were brought by different elected

officials.  And the prosecutions occurred under a different statute from the statute Plaintiffs challenge in this case.  It is difficult to understand how a reasonable person might think these decades-old events are in any way revealing of Defendants' present-day prosecutorial intentions with respect to Plaintiffs under any statute, including § 211B.06, and this case is about § 211B.02.  In addition to these common-sense reasons, two legal reasons deserve mention.  First, there is a substantial legal difference between the version of § 211B.06 in effect when Knight and Copeland were prosecuted and the current version of § 211B.02.  As Defendants point out, *see* Defs.' Reply Mem. [ECF No. 144] at 11–12, the Knight and Copeland prosecutions occurred at a time when county attorneys possessed no discretion.  The then-operative version mandated that the county attorney "shall prosecute all violations of this chapter" "under the penalty of forfeiture of office."  Minn. Stat. § 211B.16, subdiv. 1 (2002).  As amended in 2004, the county attorney's decision to prosecute became, and remains, discretionary.  *See* Minn. Stat. § 211B.16, subdiv. 1 (2004) ("A county attorney may prosecute any violation of this chapter.").  Second, the Eighth Circuit has understood *Ex parte Young* to require enforcement or a threat of enforcement of "'the statute challenged as unconstitutional.'"  *Minn. RFL Republican Farmer Lab. Caucus*, 33 F.4th at 992 (quoting *Care Committee II*, 766 F.3d at 797).  When it comes to constitutional challenges generally, different statutes do not present the same issues merely because they appear in the same section or chapter.  Here, Plaintiffs draw no meaningful legal connection between § 211B.06 and § 211B.02 that might, in turn, justify concluding that enforcement of the former shows an enforcement threat of the latter.

Plaintiffs' additional declarations give no reason to think the *Ex parte Young* exception applies here. Plaintiffs testify essentially that their fear of prosecution is justified based on the same evidence they cite to show Defendants' prosecutorial intentions: earlier OAH proceedings, information published by OAH, and the Knight and Copeland prosecutions. If this same evidence cannot independently create a fact question concerning Defendants' prosecutorial intentions, then it follows logically that Plaintiffs cannot rely on this evidence to show they reasonably fear prosecution. Plaintiffs also testify that they reasonably fear prosecution because Defendants have not disavowed all future prosecutions. The Eighth Circuit rejected this notion. Specifically, the court rejected Plaintiffs' attempt to distinguish *Care Committee II* on the ground that the County Attorneys here had not disavowed future prosecutions of § 211B.02. *Id.* The Eighth Circuit explained:

> [Defendants'] failure to disavow future prosecutions is not fatal to their claim of Eleventh Amendment immunity. The proper standard in assessing their entitlement to such immunity is whether the county attorneys' affidavits establish their "unwillingness to exercise [their] ability to prosecute a § 211B.0[2] claim against Appellants." *Care Committee II*, 766 F.3d at 797. "The *Ex parte Young* doctrine does not apply when the defendant official has *neither enforced nor threatened to enforce* the statute challenged as unconstitutional." *Id.* (emphasis added) (quoting *McNeilus Truck & Mfg.*, 226 F.3d at 438). Here, the county officials' affidavits all show that they have not enforced or threatened to enforce § 211B.02. Therefore, the *Ex parte Young* exception to Eleventh Immunity is inapplicable.

*Id.*

\*

Defendants "ha[ve] testified with assurances that [their] office will not take up [their] discretionary ability to assist in the prosecution of § 211B.0[2.]" *Id*. Plaintiffs have identified no evidence reasonably supporting a finding that they are subject to or threatened with any enforcement proceeding by Defendants. Defendants therefore enjoy Eleventh Amendment immunity, making it unnecessary to address Defendants' law-of-the-case arguments or the merits of Plaintiffs' constitutional challenges to § 211B.02.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1. Defendants' Motion for Summary Judgment [ECF No. 118] is **GRANTED**.

2. Plaintiffs' Motion for Partial Summary Judgment [ECF No. 124] is **DENIED**.

3. Plaintiffs' Complaint is **DISMISSED WITH PREJUDICE**.[3]

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: March 13, 2023                    s/ Eric C. Tostrud
                                        Eric C. Tostrud
                                        United States District Court

---

[3]     *See Riemers v. State*, 185 Fed. App'x 551 (8th Cir. 2006) (rejecting the plaintiff's contention that dismissal based on Eleventh Amendment immunity should be without prejudice (citing *Tex. Cmty. Bank v. Mo. Dep't of Soc. Serv.*, 232 F.3d 942, 943 (8th Cir. 2000))).